**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **SAMUEL LEE MOORE, # 119785,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:07-CV-308-WHA** |
| | ) | |
| **SHERIFF D.T. MARSHALL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT'S SPECIAL REPORT

COMES NOW Lowndes County, Alabama Sheriff Willie Vaughner, a Defendant in the above-styled cause, and submits his Special Report to the Court.

## INTRODUCTION

On April 11, 2007, Plaintiff Samuel Lee Moore (hereafter "Plaintiff") filed his Complaint against the Defendants, including Sheriff Willie Vaughner. On April 12, 2007, the District Court Judge ordered the Plaintiff to amend his Complaint to more specifically describe the involvement of Defendant Richard Allen, Commissioner of the Alabama Department of Corrections. On April 26, 2007, Plaintiff filed a Motion to Amend his Original Complaint, which the District Court Judge granted. On the same date, the District Court Judge ordered Defendants to file a Special Report and Answer within 40 days of that Order. Both documents are, therefore, due by June 5, 2007. On April 30, 2007, process was served on Captain Laura Gresham, Lowndes County Jail[1] Administrator, on behalf of Defendant Sheriff Vaughner.

Having been charged with unlawful distribution of controlled substances, Plaintiff was originally housed in the Montgomery County Detention Center but was transferred on May 4,

---

[1] The official name of the Lowndes County Jail is the John Hulett Correctional Facility, but for ease of drafting the Special Report, Defendant uses the name Lowndes County Jail.

2006 to the Lowndes County Jail for temporary incarceration. (Exhibit A, Plaintiff Booking Documents, "Booking Docs"; Exhibit D, Affidavit of Captain Laura Gresham, "Gresham aff.," ¶ 2.) He was booked in at 2:31 p.m. on December 4, 2006, and booked out at 11:30 a.m. on December 5, 2006. (Ex. A, Booking Docs; Ex. D, Gresham aff., ¶ 4.)

**PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges that while incarcerated at the Lowndes County Jail, he fell off his bunk in his cell and injured his ankle and that he did not receive adequate medical treatment in violation of the Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution. He demands payment of monetary damages of $100,000 from each Defendant and payment for any current and/or future medical expenses and the cost of retraining for future employment.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S ALLEGATIONS**

Defendant Sheriff Willie Vaughner denies the allegations made against him by Plaintiff as being untrue and completely without basis in law or fact. Sheriff Vaughner denies that he acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Exhibit B, Lowndes County Jail Rules and Information for Inmates, "Jail Rules," Lowndes County Detention Facility Policy and Procedure Directive, "Medical Services"; Exhibit C, Affidavit of Sheriff Willie Vaughner, "Vaughner aff.," ¶ 3; Ex. D, Gresham aff., ¶ 5; Exhibit E, Affidavit of Sergeant Marilyn Mealing, "Mealing aff.," ¶ 3; Exhibit F, Detainee Moore's Medical Record from Lowndes County Jail, "Med. Rec.") Sheriff Vaughner raises the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, and additional defenses presented below. Sheriff Vaughner reserves the right to add additional defenses if any further pleading is required or allowed by the Court. Although not stated this way, apparently Plaintiff alleges the Lowndes

2

County Jail violated the Fifth or Eighth Amendment[2] to the United States Constitution, as that amendment has been incorporated by the Fourteenth Amendment. However, as for Plaintiff's claim for violation of the Ninth Amendment, Defendant Sheriff Vaughner is unsure as to how to respond because that allegation is not stated with adequate clarity, specificity, or legal sufficiency to allow Defendant Vaughner to defend himself.

## I.    FACTS

### A.    Policy and Procedure Regarding Medical Treatment

The Lowndes County Jail has policy and procedures governing inmates' and detainees' access to medical care. (Ex. B, Jail Rules, Section XI, "Medical Services" and Lowndes County Detention Facility Policy and Procedure Directive, "Medical Services Directive"; Ex. C, Vaughner aff., ¶ 4; Ex. D, Gresham aff. ¶ 3; Ex. E, Mealing aff. ¶ 4.) The Jail Rules instruct inmates: "If you feel a need to see a doctor, you should fill out a REQUEST SLIP and give it to staff member on duty so that he/she can make an appointment. You will be carried to doctor as soon as an appointment can be made." (Ex. B, Jail Rules, Section XI, "Medical Services"; Exhibit G, Lowndes County Detention Facility Inmate Request form, "IRF.") The Detention Facility Directive instructs corrections officers that Sheriff Vaughner's policy is "that all inmates have the right to have access to and receive medical services necessary for maintaining their phsical [sic] and mental health" and that "[a]ll health services are provided and managed in accordance with state and federal standards, statutes, and precedent laws." (Ex. B, Medical Services Directive, ¶ 3.) Under "LEVELS OF CARE AND TREATMENT PHILOSOPHY," the Directive states:

---

[2] Based on the Lowndes County Jail records, it is unclear whether Plaintiff is an inmate or pretrial detainee, but it does not make a difference in the analysis of his claim because a Fifth Amendment claim by a pretrial detainee would be analyzed under the same standard as that used for an Eighth Amendment claim. Daniel v. U.S. Marshall Serv., 188 Fed. Appx. 954, 961-962 (11th Cir. 2006) ("The standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth Amendment and the Fifth Amendment's Due Process Clause.").

The Lowndes County Detention Facility makes the provision for the following levels of care, performed in privacy, in consideration for the inmate's legal rights, dignity, and feelings:

. . .

      c.     Emergency Care --- Care for an acute illness or unexpected medical need that cannot be deferred until next scheduled sick call or physician's appointment.

(Ex. B, Medical Services Directive, ¶ 5.) Further, the Directive states that "facility staff and medical personnel will consult regarding any disposition of inmates with diagnosed and/or suspected medical problems. . . ." (Ex. B, Medical Services Directive, ¶ 6.)

### B.    Medical Treatment of Plaintiff

On May 4, 2006, shortly after Sergeant Marilyn Mealing arrived for her 6:00 p.m.-to-6:00 a.m. shift at the Lowndes County Jail, an inmate informed her that Plaintiff had hurt his foot jumping out of his bunk. After this occurred, the Plaintiff walked to the booking area and did not seem to be in any serious pain. (Ex. E, Mealing aff., ¶ 5.) Sergeant Mealing called the paramedics, EmergyStat, because it was after hours for calling a doctor or the Jail's contract nurse and because that is the policy of the Lowndes County Jail when an inmate is injured in a fall. (Ex. E, Mealing aff., ¶ 5.) At no time did Plaintiff say that he was in serious pain; he said he had hurt his ankle "a little" getting out of his bunk. (Ex. E, Mealing aff., ¶ 5.) Plaintiff's bunk was not broken or abnormal. (Ex. E, Mealing aff., ¶ 5.) At no time did Plaintiff demand to see a doctor or to go to a hospital or to go to any other medical provider. (Ex. E, Mealing aff., ¶ 5.) The paramedics arrived at the Lowndes County Jail at 6:15 p.m. after being notified at 6:11 p.m. (Ex. F, Med Rec.) While in Sergeant Mealing's presence, the paramedics examined Plaintiff's ankle and determined that he had not broken it. (Ex. E, Mealing aff., ¶ 5.) Plaintiff moved his toes and ankle normally and did not demonstrate serious pain. (Ex. E, Mealing aff., ¶ 5.) The paramedics consulted with Sergeant Mealing, as required by the Lowndes County

4

Medical Services Directive, and told her to give Plaintiff Tylenol for pain. They did not say he needed to be transported for further medical care. (Ex. B, Medical Services Directive, ¶ 6; Ex. E, Mealing aff., ¶ 5; Ex. F., Med. Rec.)

In compliance with Lowndes County policy, and because Plaintiff was actually an inmate of the Montgomery County Sheriff's Office, Sergeant Mealing called that agency to explain what happened and relate what the paramedics had determined regarding Plaintiff's injury. (Ex. E, Mealing aff., ¶ 6.) The Montgomery County Sheriff's Office said that it did not transport inmates at night and that it would transport Plaintiff the next day. (Ex. E, Mealing aff., ¶ 6.) The representative of the Montgomery County Sheriff's Office did not say Plaintiff should go to a doctor, hospital or any other medical facility, nor was approval given for the paramedics to transport Plaintiff that evening to a healthcare facility. (Ex. E, Mealing aff., ¶ 6; Ex. F, Med. Rec.)

Immediately after the paramedics evaluated Plaintiff, he asked Sergeant Mealing for Tylenol, and she gave him some. (Ex. E, Mealing aff., ¶ 7.) Normally, the Lowndes County Jail's procedure is to record in the "Message Book" that Plaintiff requested pain medication like Tylenol, but Sergeant Mealing did not do so in this instance because the Tylenol was prescribed by medical personnel, i.e., the paramedics. (Ex. E, Mealing aff., ¶ 7.) Plaintiff returned at approximately 10:00 p.m., to ask Sergeant Mealing for more Tylenol, but because not enough time had passed for giving him more, she required that he wait. (Ex. E, Mealing aff., ¶ 7.) Plaintiff returned to his bed and went to sleep; therefore, Sergeant Mealing did not give him any more Tylenol that night. (Ex. E, Mealing aff., ¶ 7.) Plaintiff slept the rest of the night and did not make any requests or complaints. (Ex. D, Gresham aff., ¶ 10; Ex. E, Mealing aff., ¶ 7.) Sergeant Mealing would have known if Plaintiff had any complaint about his injury or that he was in pain that night because in accordance with her duty and the policy and procedure of the

Lowndes County Jail, she walked through the cell blocks at least once an hour to check on the inmates, particularly those that are nearby in the booking cell, like Plaintiff. (Ex. E, Mealing aff., ¶ 7.) If Plaintiff had awakened and asked for more Tylenol, she would have given him more. (Ex. E, Mealing aff., ¶ 7.) Upon Sergeant Mealing's departure at 6:00 a.m. on December 5, 2006, her normal procedure was to inform the corrections officer that replaced her about Plaintiff and his injury. Sergeant Mealing was not present when Plaintiff was transported to Montgomery County's Detention Facility on December 5, 2006. (Ex. E, Mealing aff., ¶ 8.) No corrections officer remembered Plaintiff complaining about pain or requesting any medical help on December 5, 2006. (Ex. D, Gresham aff., ¶ 7.)

Neither Sheriff Vaughner nor Captain Gresham had any contact with, knowledge of, or participation in Plaintiff's injury or the treatment he received. (Ex. C, Vaughner aff., ¶ 5; Ex. D, Gresham aff., ¶ 4.) Both Sheriff Vaughner and Captain Gresham ensure that the policy and procedures are followed by Lowndes County Jail personnel, and they have no reason to believe that any such personnel did not follow proper procedures. (Ex. C, Vaughner aff., ¶ 5; Ex. D, Gresham aff., ¶ 6.)

### C.    Grievance Procedure

The Lowndes County Jail has a Grievance Procedure for inmate complaints. (Ex. D, Gresham aff., ¶ 8.) The inmate files a form titled "LOWNDES COUNTY DETENTION FACILITY INMATE REQUEST FORM," which has categories for any type of complaint, including medical complaints. (Ex. G, IRF; Ex. D, Gresham aff., ¶ 8.) An inmate may turn that form in to any correction officer at the Lowndes County Jail. If it is a simple request that a corrections officer can handle, that officer answers the inmate's complaint. (Ex. D, Gresham aff., ¶ 8.) If the Grievance is not within that officer's authority or competence, or if the inmate is dissatisfied with the corrections officer's answer, that inmate may file the form with Captain

Gresham. (Ex. D, Gresham aff., ¶ 8.) Plaintiff did not at any time file any type of Grievance or Complaint with the officers of the Lowndes County Jail or Captain Gresham, the Jail Administrator. (Ex. C, Vaughner aff., ¶ 6; Ex. D, Gresham aff., ¶ 9.)

## II.    LAW

### A.    All Claims By Plaintiff Against Defendant are Due to be Dismissed because Plaintiff Failed to Set Forth a Claim in his Pleading in "a short and plain statement of the claim showing that the pleader is entitled to relief" in Violation of Fed. R. Civ. P. 8, and Plaintiff's Complaint does not meet the heightened pleading standard imposed by Eleventh Circuit precedent.

#### 1.    Heightened Pleading Standard.

Under the heightened pleading standard, "the plaintiff must provide a greater degree of factual specificity than is ordinarily necessary under the notice pleading approach of the Federal Rules of Civil Procedure. Hunter v. Dist. of Columbia, 943 F.2d 69, 75 (D.C. Cir. 1991) (citation omitted)."

> "[T]his circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim. Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims."

Swann v. S. Health Partners, Inc., 388 F.3d 834, 838 (11th Cir. 2004) (citing Laurie v. Ala. Court of Crim. App., 256 F.3d 1266, 1275-76 (11th Cir. 2001), and Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000), for the proposition that "the heightened pleading standard is only applicable in § 1983 suits against individuals for whom qualified immunity is available.").

#### 2.    Plaintiff's Complaint.

Plaintiff's Complaint states that he broke his foot and did not receive adequate medical care and that this lack of care was cruel and unusual and violated the Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. (Plaintiff's Complaint, pp. 2-3.) He did not allege that he filed a Grievance with the Lowndes County Jail, nor did he explain with

7

specificity how Defendants would know that he needed more medical care or what they should have done to provide such care, something that is absolutely essential for a claim of deliberate indifference. (Plaintiff's Complaint, pp. 2-3.) Plaintiff does not contend that Defendants were deliberately indifferent to his medical condition, nor does he contend that his injury was so serious that it would be obvious to the Defendants that he needed more medical care than he was provided. (Plaintiff's Complaint, pp. 2-3.) Nor does he explain how Defendants would have known that their conduct was deliberately indifferent to Plaintiff's condition. (Plaintiff's Complaint, pp. 2-3.)

3.    **Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. Plaintiff did not pursue the Grievance Procedure at all. (Ex. D, Gresham aff., ¶ 9.) Even if Plaintiff had fulfilled the requirement as to all the steps in the grievance procedure provided at the Lowndes County Jail and been denied relief, it was incumbent upon Plaintiff to proceed further with the State Board of Adjustment procedure. Plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).

Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq. Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment. A claimant "shall have the right to file and prosecute his claim before the board in person or by counsel or agent of his own choice, whether

8

such agent be licensed to practice law or not." Ala. Code § 41-9-63. A claimant has one year

from the date of the alleged injury in which to file such a claim. Ala. Code § 41-9-65. One year

from the incident date was May 5, 2007; therefore, Plaintiff's opportunity to use that process has

expired.

     As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing

this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998)

(affirming dismissal of prison action due to failure to exhaust administrative remedies), and on

that basis alone, Sheriff Vaughner is entitled to have Plaintiff's claims against him dismissed.

> **B.**    **All Claims by the Plaintiff against the Defendant in his Official Capacity must fail based on Eleventh Amendment Immunity and because he is not a "person" under 42 U.S.C.A. § 1983.**

     The Plaintiff has not stated in his Complaint whether his claims against Sheriff Vaughner

are in his official capacity or individual capacity. Therefore, out of an abundance of caution,

Sheriff Vaughner analyzes the Plaintiff's claims in light of both individual and official

capacities.

     The Plaintiff's claims against Sheriff Vaughner in his official capacity are due to be

dismissed for lack of subject matter jurisdiction, as such claims are barred by the Eleventh

Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th

Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment

immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in

his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence,

Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity

is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419,

1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed

by county sheriffs).

In addition, the official capacity claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against Sheriff Vaughner in his official capacity should therefore be dismissed because he is not a "person" under § 1983; therefore, claims against him in his official capacity fail to state a claim upon which relief can be granted.  Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

   C.   **Plaintiff has failed to allege any personal involvement by Sheriff Vaughner in the allegations against the Sheriff; therefore, Sheriff Vaughner has not been sued under 42 U.S.C. § 1983 in his individual capacity.**

In order to present a cognizable claim against a public official in his individual capacity, the language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation.  Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights, or a breach of a duty imposed by state or local law which results in constitutional injury.  Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has alleged no actions in which Sheriff Vaughner was personally involved with respect to the alleged lack of adequate medical treatment; therefore, he has made a claim against Sheriff Vaughner only for acts committed by him in his official capacity.  Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).  For Sheriff Vaughner to face liability as a defendant in a § 1983 action, Plaintiff must allege actions against him in his personal, not his official, capacity.  Plaintiff has offered no allegation demonstrating that this named Defendant was in any way involved in the actions he claims were constitutionally infirm.  There are absolutely no

10

facts – in fact, the Complaint is completely devoid of any allegation of personal involvement by or even knowledge of the various conditions complained of on the part of Sheriff Vaughner – to show that this Defendant personally participated in the claims made the basis of the Plaintiff's Complaint, nor does the Plaintiff allege specifically how this Defendant violated his constitutional rights.  As such and on this basis alone, Plaintiff's claims against this Defendant are due to be dismissed.

Plaintiff must show a causal connection between the Defendant and the alleged deprivation but may not do so using "respondeat superior."  Brown, supra, at 671.  To the extent that Plaintiff's claim against Sheriff Vaughner is an attempt to hold him liable under a *respondeat superior* theory, his claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996).  There are no facts that show a causal connection between any action or inaction by Sheriff Vaughner and the alleged constitutional violations.  Therefore, Plaintiff's claims against the Defendant are due to be dismissed.

Plaintiff may still show a causal connection between the alleged deprivation, even when there exists no personal involvement by a supervising official, like Sheriff Vaughner, but the abuse "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  Brown, supra, at 671.  Not only does the Plaintiff not allege that Sheriff Vaughner knew about the injury to his ankle, Plaintiff also does not explain any other incidents that Sheriff Vaughner knew about or should have known about, nor does he allege that his injury was so obvious and blatant that the Sheriff should have known about it.  Therefore, Plaintiff has failed to show a causal connection and resulting cognizable injury based on Sheriff Vaughner's

supervision of the Lowndes County Jail.  Sheriff Vaughner in his affidavit denies that he had any personal involvement with the Plaintiff or any of his claims in the Complaint.  (Ex. C, Vaughner aff., ¶ 5.)  Because Plaintiff has failed to causally connect Sheriff Vaughner to a constitutional injury that forms the basis for the Complaint and failed to show a causal connection between Sheriff Vaughner's actions and any of the other conditions that form the basis of Plaintiff's Complaint, Plaintiff has only sued Sheriff Vaughner in his official capacity.  Defendant has previously shown that Sheriff Vaughner is entitled to Eleventh Amendment immunity based on a § 1983 action against him in his official capacity.  Therefore, even if Plaintiff's Complaint was adequate, the Defendant is entitled to judgment on the Complaint.

1.    **Except in cases of emergencies that are obvious even to laypersons, medical professionals, not the Sheriff, are to make decisions regarding medical treatment for inmates.**

With respect to the medical claims by Plaintiff, he has alleged no facts showing that Sheriff Vaughner had any type of personal involvement or that he set any type of policy that would encourage poor medical treatment or that he neglected any obvious and flagrant abuses which occurred.  Any claim by Plaintiff regarding medical care fails against Sheriff Vaughner because the Jail Rules require that professional medical personnel provide care to detainees and inmates.  (Ex. B, Jail Rules, "Medical Services.")  Plaintiff has failed to allege any specific failing on the part of anyone at the Lowndes County Jail for any injury to his ankle.  Therefore, Plaintiff's Complaint should be dismissed.

Even if Plaintiff could show some type of personal involvement by or jail policy set by Sheriff Vaughner that caused or contributed to the non-treatment of Plaintiff's injury or condition, in order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care,

deliberate indifference to medical needs amounts to an Eighth Amendment violation only if

those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as
> mandating treatment or one that is so obvious that even a lay person would easily
> recognize the necessity for a doctor's attention. A prison or medical official may
> be held liable under the Eighth Amendment for actions with "deliberate
> indifference" to inmate health or safety only if he knows that inmates face a
> substantial risk of serious harm and disregards that risk by failing to take
> reasonable measures to abate it. Mere negligence does not suffice to prove
> deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind

more blameworthy than negligence."). Furthermore, the Eleventh Circuit requires four things for

a viable claim for denial of medical care.

> As we have held, to make out a case for denial of medical care in violation of the
> Eighth Amendment, requires four things: "an objectively serious need, an
> objectively insufficient response to that need, subjective awareness of facts
> signaling the need, and an actual inference of required action from those facts."
> Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). Mere negligence or
> medical malpractice is insufficient to prove a constitutional violation. Harris v.
> Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). "Nor does a simple difference in
> medical opinion between the prison's medical staff and the inmate as to the
> latter's diagnosis or course of treatment support a claim of cruel and unusual
> punishment." Id.

Hilton v. McHugh, 178 Fed. Appx. 866, 871, unpub'd (11th Cir. 2006). Therefore, where the

Plaintiff has received medical attention and the dispute concerns the adequacy of the medical

treatment, deliberate indifference is not shown. Id.; see also Beamon v. Georgia, 2007 WL

842053, *2, slip op. (S.D. Ga. 2007) ("a mere difference in opinion between prison medical

officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim

of cruel and unusual punishment").

As explained above, an inmate does not have a right to a *specific* kind of treatment. City

of Revere v. Mass. Gen'l Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's

constitutional right is to receive the needed medical treatment; *how [a municipality] obtains*

***such treatment is not a federal constitutional question***") (emphasis added).  Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff.  "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments."  Beamon, supra, 2007 WL 842053 at *2, quoting Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985); Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments.").

Based on the attached affidavits, Plaintiff was at the Lowndes County Jail less than 24 hours, walked to the booking area of the Lowndes County Jail just after the injury, did not display or speak of serious pain at any time during the evening or during the night, slept without complaint, and told Sergeant Mealing that he hurt his ankle "a little" when he jumped from his bunk.  Therefore, Plaintiff did not on May 4th and 5th, 2006 have an "objectively serious medical need," and Sergeant Mealing's call to EmergyStat for paramedic help and provision of Tylenol to the Plaintiff do not demonstrate an "insufficient response" or "deliberate indifference."  Plaintiff did not even complain about his medical treatment, nor did he request different medical care while at the Lowndes County Jail.

Furthermore, the Defendant does not have any kind of medical education, training or experience, nor should such education or training be required of a sheriff. Sheriff Vaughner must rely upon the professional judgment of medical professionals who have been retained to provide care to injured inmates and detainees. The evidence shows that Plaintiff was treated by medical professionals, paramedics called upon by the jail staff, to determine the seriousness of Plaintiff's injury to his ankle. Defendant, Sheriff Vaughner, who is not a trained and licensed medical provider, is in no way responsible for second-guessing the judgments of trained medical professionals, like paramedics. Also, the facility primarily responsible for Plaintiff, the Montgomery County Detention Facility, based its decision on the paramedics' evaluation of the Plaintiff, whose condition was, in their opinion, not so serious as to require immediate transport to that facility or to a hospital. The employees of Sheriff Vaughner relied upon the opinion of medical professionals in all that they did in Plaintiff's case. Therefore, Defendant is entitled to qualified immunity from Plaintiff's medical care claims. Hilton v. McHugh, 178 Fed. Appx. 866, n.1 (11th Cir. 2006) (dismissing complaint involving medical care claim against warden); Taylor v. Adams, 221 F.3d 1254, 1256 (11th Cir. 2000) (holding that summary judgment was appropriate in deliberate indifference claim against Sheriff because of status as state officer, entitled to Eleventh Amendment Immunity).

D.    **Defendant is Entitled to Qualified Immunity and Plaintiff's Claims are Due to be Denied Because the Defendant did not Violate a Constitutional Right Belonging to the Plaintiff, nor was there Pre-existing "*Clearly Established Law.*"**

Plaintiff must meet two prongs in order to satisfy the Eleventh Circuit's standard for determining whether Plaintiff has made out a claim sufficient to overcome qualified immunity to which Sheriff Vaughner is entitled.

1.    **Plaintiff's Claims are Due to be Denied Because he has not Stated a Constitutional Violation within his Complaint Sufficient to Overcome Defendant's Entitlement to Qualified Immunity.**

Based on U.S. Supreme Court precedent, the Eleventh Circuit has stated a two-part inquiry in determining whether a Plaintiff has overcome the qualified immunity to which a public official is entitled in the face of a § 1983 claim.

> The defendants having established their eligibility for qualified immunity, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate. Lee[ v. Ferraro,] 284 F.3d [1188,] at 1194 [(11th Cir. 2002)]. This next step consists of a two-part inquiry, set forth in Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). *First we ask, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' Id. If, assuming the plaintiff's allegations were true, no such right would have been violated, the analysis is complete.* However, if a constitutional violation can be made out on the plaintiff's facts, we then must determine 'whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law.' Garrett v. Athens-Clarke County, 378 F.3d 1274, 1278-79 (11th Cir. 2004) (citing Saucier, 533 U.S. at 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272).

Harris v. Coweta County, Ga., 406 F.3d 1307, 1312-13 (11th Cir. 2005) (emphasis added).  Even assuming that Plaintiff's allegations are true, he has not demonstrated in those allegations that he was actually denied any medical treatment while at the Lowndes County Jail.  In fact, the evidence from his medical records illustrate that Sergeant Mealing called the paramedics and that Plaintiff did not complain about his condition or pain during the short period of time that he stayed at the Lowndes County Jail.  Therefore, there was no action or inaction by the Lowndes County Jail or Sheriff Vaughner that thereby denied him "of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  Based on Plaintiff's Complaint and the affidavits, jail and medical records, jail rules, and the Medical Services Directive provided by Sheriff Vaughner, Plaintiff experienced a fall from his bunk, received prompt evaluation from trained medical professionals, received pain reliever from jail personnel, slept the night without any complaint, and was then transported to the Montgomery County Detention Facility.  Such a

complaint is not an adequate basis for a constitutional challenge.  Therefore, Sheriff Vaughner did not violate any constitutional right of the Plaintiff and is entitled to have Plaintiff's claim against him dismissed.

      **2.**        **Alternatively, Defendant is entitled to summary judgment based on qualified immunity because nothing in his conduct crossed a "bright line" contour of clearly established constitutional law.**

Even if Plaintiff had met his burden with respect to the first prong, he still has not met his burden under the second prong of the analysis required for overcoming a public official's qualified immunity.  Public officials, like Sheriff Vaughner here, are protected in their individual capacities by qualified immunity as long as "a reasonable officer could have believed [his actions] to be lawful, in light of *clearly established law* and the information [that the officer] possessed." Anderson v. Creighton, 483 U.S. 635, 636 (1987) (emphasis added).  The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*."  Lassiter v. Ala. A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted).

The Eleventh Circuit has divided consideration of qualified immunity into two "prongs" of analysis as articulated in Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983).

> First, "the defendant government official must prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Sammons v. Taylor, 967 F.2d 1533, 1539 (11th Cir. 1992) (quoting Zeigler, 716 F.2d at 849).  "[T]hen the burden shifts to the plaintiff to demonstrate that the defendant violated clearly established constitutional law." Id. (quoting Zeigler, 716 F.2d at 849).

Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994).  Once it is established that the Plaintiff has stated a claim and that the Defendant was acting within his discretionary authority, the Court then considers whether the contours of the constitutional right allegedly violated were "clearly established."  In making this assessment, the reviewing court must examine the state of law *at the*

*time the alleged deprivation occurred.* See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994); Adams v. St. Lucie County Sheriff's Dep't, 962 F.2d 1563, 1578 (11th Cir. 1992) (Edmondson, J., dissenting), rev'd and reasoning of original dissent adopted, 998 F.2d 923 (11th Cir. 1993) (en banc).

The Plaintiff must show that clearly established law provided Sheriff Vaughner with fair warning that his conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision is specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003). "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

The law must be relatively "fact specific" and "so particularized" that it would have been obvious or "apparent" to the defendant that his actions were unlawful. See Rodgers, 39 F.3d at 311; Hansen v. Soldenwagner, 19 F.3d 573, 575 (11th Cir. 1994) (both reversing denial of qualified immunity). As the Eleventh Circuit has explained, "[a] plaintiff cannot rely on . . . 'broad legal truisms' to show that a right is clearly established. . . . '[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994) (reversing denial of qualified immunity as to some defendants)

(quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1992)). While the facts of prior cases establishing the law in a particular context need not be identical, "the salient question that the Court of Appeals ought to have asked is whether the state of the law in 1995 gave respondents fair warning that their alleged treatment of [Plaintiff] was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508 (2002). This case law must "dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Hudson v. Hall, 231 F.3d 1289, 1294 (11th Cir. 2000) (quoting Lassiter, at 28 F.3d 1150).

After a diligent search of the relevant case law on medical care for ankles or legs injured by a fall, counsel for the Defendant has been unable to find a case involving materially similar facts that held conduct similar to that engaged in by the Defendant to be unlawful.[3] Defendant Sheriff Vaughner issued a Directive and Jail Rules requiring corrections officers to care for inmates, and the Sheriff properly instructed them to rely upon the instructions and opinions of medical professionals when providing that care. (Ex. B, Medical Services; Ex. C, Vaughner aff., ¶¶ 4, 5.) Sergeant Mealing followed these Rules and Directive during Plaintiff's short stay at the

---

[3] There are some cases involving falls, but none of them would assist this Court, not being equivalent to the Plaintiff's particular case: Hathcock v. Armor Corr. Health Servs., Inc., 186 Fed. Appx. 962, 964, 2006 WL 1933371, **1 (11th Cir. 2006) (case of plaintiff who required seizure medicine and who was not examined after his fall); Young v. Gray, 560 F.2d 201 (5th Cir. 1977) (holding that claim did not state an Eighth Amendment claim and dismissal was appropriate in prisoner's allegation that in treating head injuries he sustained when he fell from a trailer the doctor should have undertaken additional diagnostic measures); Harris v. Coweta County, 21 F.3d 388 (11th Cir. 1994) (holding summary judgment for sheriff improper when for over two months, sheriff denied proper medical treatment to detainee's hand injury after being told by medical professionals of its seriousness and what treatment was needed); Putnam v. Ward, 2006 WL 2683316, *1 (S.D. Ga. 2006) (holding that plaintiff inmate failed to show a genuine issue of material fact after he was diagnosed by prison medical personnel as having strained several bowel muscles during fall from bunk, and he spent several months trying to convince prison official he needed further treatment): Gissendanner v. Crosby, 2005 WL 3133468, *2 (M.D. Fla. 2005) (holding that dismissal was appropriate when plaintiff claimed insufficient treatment after fall, resulting in "knot" on the back of his head and swollen neck and back); Kruger v. Jenne, 164 F. Supp. 2d 1330, 1334 (S.D. Fla. 2000) (in claim against medical care company, inmate alleged non-treatment from injuries from three falls that occurred over a two-month period); Lancaster v. Monroe County, Ala., 1996 WL 529195, *3 (S.D. Ala. 1996) (chronic alcoholic inmate died of intracranial hemorrhage, after he appeared to have a seizure, fell from the top bunk, landed on his back and hit his head on the floor, where he lay bleeding from his mouth).

Lowndes County Jail.  (Ex. E, Mealing aff., ¶¶ 5, 6, 7.)  Neither Sheriff Vaughner's nor Sergeant Mealing's conduct with regard to Plaintiff could be construed as "so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing."  Storck, 354 F.3d at 1318.

Qualified immunity recognizes the need for public officials to be immune not only from liability but from the litigation process itself.  The Eleventh Circuit began applying the heightened pleading standard in qualified immunity cases against government officials "to weed out nonmeritorious claims."  See GJR Inv., Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).  The evidence clearly shows that Sheriff Vaughner has not violated a constitutional right of the Plaintiff.  However, even if his acts could be construed as violating a right of the Plaintiff, Sheriff Vaughner has done nothing to cross any bright line of clearly established constitutional law. Therefore, he is entitled to qualified immunity.

### E.    Summary Judgment Standard

On a motion for summary judgment, the Court should view the evidence in the light most favorable to the nonmovant.  Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  Reeves, 530 U.S. at 151, quoting 9A C. Wright & A.

Miller, Federal Practice and Procedure § 2529, p. 299.[4]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc), quoting Mass. Sch. of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## III.    CONCLUSION

Defendant Sheriff Vaughner denies each and every allegation made by Plaintiff Moore in the Complaint.  Sheriff Vaughner has not acted in a manner so as to deprive the Plaintiff of any right to which he is entitled.  The PLRA bars Plaintiff's Complaint because it is not specific or clear enough to meet the requirements of the federal rules, he filed no Grievance with the Lowndes County Jail, and he filed no claim with the State Board of Adjustment.  Also, Defendant Sheriff Vaughner is entitled to Eleventh Amendment Immunity and Qualified Immunity, and based on the Plaintiff's Complaint, the law in existence at the time of Plaintiff's injury, and the facts presented by Defendant, it is impossible for Plaintiff to overcome that immunity.

## IV.    MOTION FOR SUMMARY JUDGMENT

Sheriff Vaughner respectfully requests that this Honorable Court treat his Special Report as a Motion for Summary Judgment, and grant unto him the same.

---

[4] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Respectfully submitted this the 5th day of June 2007.

> **s/Daryl L. Masters**
> DARYL L. MASTERS, Bar No. MAS018
> WINTHROP E. JOHNSON, Bar No. JOH086
> Attorneys for Defendant Sheriff Willie Vaughner
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  wjohnson@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the **5th day of June, 2007**, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **Thomas T. Gallion, III, Esq.**

I also hereby certify that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Samuel Lee Moore, AIS #119785
Camden Work Release Center
1780 Hwy 221 East
Camden, AL  36726

> **s/Daryl L. Masters**
> OF COUNSEL

# EXHIBIT  A

## Plaintiff Booking Documents

# JAIL SUMMARY

Name: MOORE, SAMUEL, LEE
DOB: 01/13/1949 RACE: BLK SEX: M
ADDRESS: 1807 PALMETTO ST.
MONTGOMERY AL 36109
PHONE: 334-613-0617
LICENSE:
SSN: 424583886
HGT: 509 WGT: 160
HAIR: BLK EYE: BRO
BUILD:  CMPLXN: DRK
SCARS/TATTOO:
EMPLOYMENT STATUS:
OCCUPATION:
EMPLOYER:
EMPLOYER ADDRESS:
EMPLOYER PHONE:


HEALTH AT TIME OF BOOKING


MEDICAL CONDITIONS


JAIL SUMMARY

| EVENT | BOOKDATE | BOOKTIME | RELEASEDATE | RELEASETIME |
|-------|----------|----------|-------------|-------------|
| 1 | 2006-12-04 | 14:31 | 2006-12-05 | 11:30 |
|  | CHARGE | TYPE | DESCRIPTION | |
|  | 1 | FEL | HOLD FOR MCSO | |

# DAILY BOOKING SHEET
# LOWNDES COUNTY JAIL
# HAYNEVILLE, ALABAMA

Name _Samuel lee Moore_ Race _B_ Sex _M_ Age _57_ Eyes _BK_ Hair _b_

Ht. _5'9_ Wt. _140_ DOB _1-13-49_    NCIC Check _____

Address _1807 Palmetto St._    _Mntg._    _AL_    _36107_
     (STREET)    (APT..)    (CITY)   (STATE)   (ZIP)

Made PX ____ Yes ____ No ____ Reason _____ S/M/T _____

Next of Kin _____

Address _____
    (STREET)   (APT.)   (CITY)   (STATE)   (ZIP)

CHARGE _____ BOND _____ CHARGE _____ BOND _____
CHARGE _____ BOND _____ CHARGE _____ BOND _____
CHARGE _____ BOND _____ CHARGE _____ BOND _____
H AGENCY _____ CHARGE _____ BOND _____
O AGENCY _____ CHARGE _____ BOND _____
L AGENCY _____ CHARGE _____ BOND _____
D AGENCY _____ CHARGE _____

1. Are you presently in need of any immediate medical attention Yes _____ No _____
   a. If so, state your problem(s) _____

2. Are you presently taking any medication Yes _Zantac_ No _____
   a. If so, what kind _Zantac_ _____

3. Are you presently under a doctor's care Yes _____ No _____ Doctor's Name: _____
   a. What treatment are you receiving _____

4. Are you allergic to any kind of medication Yes _____ No _____
   a. If so, what kind _____

5. Do you have any false limbs (teth, eyes, etc.) Yes _____ No _____ What: _____

6. Are you presently receiving any psychiatric treatment Yes _____ No _____
   a. Doctor's Name: _____ Phone or Hospital: _____

7. Are you suffering from any type of illiness Yes _Ulcer_ No _____
   a. What illness Yes _____ No _____

I authorize the County Sheriff's Department to inspect any incoming or outgoing mail addressed to or from me in accordance with DMM 115.95 pgh.97 U.S. Postal Service.

Yes _____ No _____

_Samuel Lee Moore_
Signature of Person Arrested

Arresting Officer(s) _____
Booking Officer(s) _____

### I have received all properties taken from me by the County Sheriff's Department.

Date of Release _____    _____
                             Signature of Person Released

Time of Release _____

Type of Release _____    _____
                             Signature of Releasing Officer



*PE#M79 LK#62-Red Bx*   *#14502* *Dated 10-25-06*

# Montgomery County Sheriff's Office
## 115 S. Perry St
## Montgomery, AL 36104

JAIL ORI: AL0030000                                    Wednesday, October 25, 2006

HDMS#:       *CNV014502*

Page 1 of 2

## PERSONAL INFORMATION

### MOORE, SAMUEL LEE



| | | | |
|---|---|---|---|
| **Alias:** | MOORE, SAM | | |
| **Race:** | B | **Sex:** | M |
| **Address:** | | **Height:** | 509 | **Weight:** | 160 |

**Address:**

1807 PALMETTO STREET
MONTGOMERY, AL 36109

| | | | |
|---|---|---|---|
| | | **Hair:** | GRY | **Eyes:** | BRO |
| | | **Glasses:** | | **Length:** | SHORT |
| **Phone:** | 334-613-0617 | **Facial:** | NONE | **Complexion:** | DARK |
| **DL#:** | | **DOB:** | 01/13/1949 | (Age: 57) | |
| **FBI:** | | **SID:** | | **SSN:** | 424583886 |

## ARREST INFORMATION

| | | | | |
|---|---|---|---|---|
| **Booking#:** MCS0000015987 | **Arresting Agency:** MCS | **Arresting Officer:** MEANS | **Case #:** | **Warrant #:** CC04786 |
| **Booking Officer:** DNEARER | **Booking Date/Time:** 10/25/06 0:20 | **Arrest Date/Time:** 10/25/2006 0045 | **Release Date/Time:** | **Housed:** 1B-1 *3A9* |

## CHARGES

*Sent to DOC 11-14-06*

*econ-786(FTA)*

| # | Charge | Charge Count | Bond |
|---|--------|--------------|------|
| 1 | Unlawful distribution of controlled substances (SELL/DISTRIBUTION OF DANGEROUS DRUGS) | 1 | 500.00 |
| 2 | NEGOTIATING WORTHLESS INST (CC04735) | 1 | 500.00 |
| 3 | NEGOTIATING WORTHLESS INST (CC 789) | | |

*DOC6 3315.00 -01*
*rel by nta-06*
*10-21*

**Total Number of Charges:** 3          **Total Bond:** ~~$1,000.00~~

## HOLDS

| Hold For Agency | Hold Contact | Hold Contact Phone | Hold Active | Expiration |
|-----------------|--------------|--------------------|-------------|-----------|
| | | | | |

**Total Number of Holds:**

## DETAINERS

| # | Detain For | Date of Detainer | Authorized By |
|---|-----------|------------------|---------------|
| 1.00 | HOLD FOR WCU PER MARGARET EXT. 1617 | 10/25/2006 00:00:00 | MOWENS |

*Rel. 10/24/d (Margaret Ext 1617*

**Total Number of Detainers:** 1

---

| MCS0000015987    14502 | | MCS0000015987    14502 | |
|---|---|---|---|
| **MOORE, SAMUEL LEE** |  | **MOORE, SAMUEL LEE** |  |
| *CNV014502* | | *CNV014502* | |

Fingerprinted | R84 Completed
☑ Yes | ☑ Yes
☑ No | ☑ No

# ALABAMA UNIFORM ARREST REPORT

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| 1 ORI# | 2 AGENCY NAME | 3 CASE # | 4 SFX |
|---|---|---|---|
| AL.0450000 | LOWNDES | 1759701 | |

**IDENTIFICATION**

| 5 LAST, FIRST, MIDDLE NAME | | | 6 ALIAS AKA |
|---|---|---|---|
| MOORE | SAMUEL | LEE | SAM MOORE |

| 7 SEX ☒M ☐F | 8 RACE ☒W ☐B ☐A | 9 HGT. 509 | 10 WGT. 160 | 11 EYE BRO | 12 HAIR BLK | 13 SKIN DRK | 14 ☐1 SCARS ☒2 MARKS ☐3 TATOOS ☐4 AMPUTATIONS |
|---|---|---|---|---|---|---|---|

| 15 PLACE OF BIRTH (CITY, COUNTY, STATE) | 16 SSN | 17 DATE OF BIRTH | 18 AGE | 19 MISCELLANEOUS ID # |
|---|---|---|---|---|
| MONTGOMERY AL. | 4 2 4 - 5 8 - 3 8 6 | 0 1 1 3 4 9 | 57 | |

| 20 SID # | 21 FINGERPRINT CLASS | KEY | MAJOR | PRIMARY | SCDV | SUB-SECONDARY | FINAL | 22 DL # | 23 ST |
|---|---|---|---|---|---|---|---|---|---|
| | HENRY CLASS | | | | | | | | |
| 24 FBI # | NCIC CLASS | | | | | | | 23 IDENTIFICATION COMMENTS | |

| 26 ☒ RESIDENT ☐ NON-RESIDENT | 27 HOME ADDRESS (STREET, CITY, STATE, ZIP) 1807 PALMETTO ST.MONTGOMERY AL. 36109 | 28 RESIDENCE PHONE 334-613-0617 | 29 OCCUPATION (BE SPECIFIC) |
|---|---|---|---|

| 30 EMPLOYER (NAME OF COMPANY/SCHOOL) | 31 BUSINESS ADDRESS (STREET, CITY, STATE, ZIP) | 32 BUSINESS PHONE ( ) |
|---|---|---|

**ARREST**

| 33 LOCATION OF ARREST (STREET, CITY, STATE, ZIP) MCSO | 34 SECTOR # | 35 ARRESTED FOR YOUR JURISDICTION? ☒ YES ☐ NO ☐1 IN STATE ☐2 OUT STATE ☐3 AGENCY |
|---|---|---|

| 36 CONDITION OF ARRESTEE: ☐1 DRUNK ☒3 SOBER ☐2 DRINKING ☐4 DRUGS | 37 RESIST ARREST? ☐1 YES ☒0 NO | 38 INJURIES? ☒1 NONE ☐2 OFFICER ☐3 ARRESTEE | 39 ARMED? ☐1 Y ☒0 N | 40 DESCRIPTION OF WEAPON ☐1 HANDGUN ☐4 OTHER FIREARM ☐2 RIFLE ☐5 OTHER WEAPON ☐3 SHOTGUN |
|---|---|---|---|---|

| 41 DATE OF ARREST 1 2 0 4 0 6 | 42 TIME OF ARREST 2:27 ☒1 AM ☐2 PM ☐3 MIL. | 43 DAY OF ARREST ☐S ☐M ☐T ☐W ☐T ☐F ☐S | 44 TYPE ARREST ☐1 ON VIEW ☐2 CALL ☒3 WARRANT | 45 ARRESTED BEFORE? ☐1 YES ☐0 NO ☐ UNKNOWN |
|---|---|---|---|---|

| 46 CHARGE-1 ☐ FEL ☐ MISD HOLD FOR MCSO | 47 UCR CODE 9999 | 48 CHARGE-2 ☐ FEL ☐ MISD | 49 UCR CODE |
|---|---|---|---|

| 50 STATE CODE/LOCAL ORDINANCE | 51 WARRANT # | 52 DATE ISSUED M D Y | 53 STATE CODE/LOCAL ORDINANCE | 54 WARRANT # | 55 DATE ISSUED M D Y |
|---|---|---|---|---|---|

| 56 CHARGE-3 ☐1 FEL ☐2 MISD | 57 UCR CODE | 58 CHARGE-4 ☐1 FEL ☐2 MISD | 59 UCR CODE |
|---|---|---|---|

| 60 STATE CODE/LOCAL ORDINANCE | 61 WARRANT # | 62 DATE ISSUED M D Y | 63 STATE CODE/LOCAL ORDINANCE | 64 WARRANT # | 65 DATE ISSUED M D Y |
|---|---|---|---|---|---|

| 66 ARREST DISPOSITION ☒ HELD ☐ BAIL ☐ RELEASED ☐ TOT—LE ☐ OTHER | 67 IF OUT ON RELEASE WHAT TYPE? MCSO | 68 ARRESTED WITH (1) ACCOMPLICE (FULL NAME) |
|---|---|---|
| | | 69 ARRESTED WITH (2) ACCOMPLICE (FULL NAME) |

**VEHICLE**

| 70 VYR | 71 VMA | 72 VMO | 73 VST | 74 VCO TOP BOTTOM | 75 TAG # | 76 LIS | 77 LIY |
|---|---|---|---|---|---|---|---|

| 78 VIN | 79 IMPOUNDED? ☐1 YES ☐2 NO | 80 STORAGE LOCATION/IMPOUND # |
|---|---|---|

| 81 OTHER EVIDENCE SEIZED/PROPERTY SEIZED | ☐ CONTINUED IN NARRATIVE |
|---|---|

**JUVENILE**

| 82 JUVENILE DISPOSITION: ☐1 HANDLED AND RELEASED ☐2 REF. TO JUVENILE COURT ☐3 REF. TO WELFARE AGENCY ☐4 REF. TO OTHER POLICE AGENCY ☐5 REF. TO ADULT COURT | 83 RELEASED TO |
|---|---|

| 84 PARENT OR GUARDIAN (LAST, FIRST, MIDDLE NAME) | 85 ADDRESS (STREET, CITY, STATE, ZIP) | 86 PHONE ( ) |
|---|---|---|

| 87 PARENTS EMPLOYER | 88 OCCUPATION | 89 ADDRESS (STREET, CITY, STATE, ZIP) | 90 PHONE ( ) |
|---|---|---|---|

**RELEASE**

| 91 DATE AND TIME OF RELEASE 1 2 0 5 0 6 1:55 ☒ AM ☐ PM ☐ MIL. | 92 RELEASING OFFICER NAME | 93 AGENCY/DIVISION SO | 94 ID # |
|---|---|---|---|

| 95 RELEASED TO: MCSO | 96 AGENCY/DIVISION | 97 AGENCY ADDRESS P.O. BOX 157 Hayneville AL 36040 |
|---|---|---|

| 98 PERSONAL PROPERTY RELEASED TO ARRESTEE ☐1 YES ☐2 NO ☐3 PARTIAL | 99 PROPERTY NOT RELEASED/HELD AT: | 100 PROPERTY # |
|---|---|---|

| 101 REMARKS (NOTE ANY INJURIES AT TIME OF RELEASE) |
|---|

| 102 SIGNATURE OF RECEIVING OFFICER SGT.LEAR TAYLOR | 103 SIGNATURE OF RELEASING OFFICER LT. Cottrell | STATE USE |
|---|---|---|

| MULTIPLE CASES CLOSED | 104 CASE # | 105 SFX | 106 CASE # | 107 SFX | 108 CASE # | 109 SFX | 110 ADDITIONAL CASES CLOSED NARRATIVE ☐Y ☐N |
|---|---|---|---|---|---|---|---|

| 111 ARRESTING OFFICER (LAST, FIRST, M.) OFF.JAILES | 112 ID # MCSO | 113 ARRESTING OFFICER (LAST, FIRST, M.) | 114 ID # | 115 SUPERVISOR ID # | 116 WATCH CMDR. ID # |
|---|---|---|---|---|---|

**TYPE OR PRINT IN BLACK INK ONLY**

ACJIC—34 REV. 10-90

# EXHIBIT  B

**Lowndes County Jail Rules and Information for Inmates, Lowndes County Detention Facility Policy and Procedure Directive**

# RULES AND INFORMATION

# FOR INMATES

## LOWNDES COUNTY DETENTION FACILITY
## HAYNEVILLE, ALABAMA

## WILLIE VAUGHNER
## SHERIFF

Revised 01/11/2006



# MAILING ADDRESS:

# LOWNDES COUNTY JAIL
# P.O. BOX 157
# HAYNEVILLE , ALA
# 36040

LOWNDES COUNTY DETENTION FACILITY

RULES AND INFORMATION FOR INMATES

These RULES AND INFORMATIN FOR INMATES contain information, which will be important to you, while you are confined in the Lowndes County Detention Facility. You will find not only rules by which you must abide while confined in the jail but also information concerning what is expected of you and what is available to you as an inmate in the Lowndes County Jail.

These are rules to govern everyone, such as laws of the United States and the State of Alabama. There are rules to govern only certain people, to get along with each other. Similarly, there are rules to govern inmates committed to the custody of the Lowndes County Detention Facility. They are designed to help you to live together productively, safely, and as comfortably as possible. Please read them carefully and abide by them while you are confined to the jail.

Additionally, you can expect certain rights and privileges while you are confined to the Lowndes County Detention Facility. Please read all of the information in this document carefully so that you will be aware of the manner in which the jail operates.

## SECTION I. PROHIBITED ACTS

There are certain prohibited acts for which you may be disciplined or prosecuted while you are an inmate in the Lowndes County Detention Facility. These apply to your relationship with jail staff personnel and other inmates. These prohibited acts are:

1.    Killing.
2.    Assaulting any person.
3.    Fighting with another person.
4.    Threatening another with bodily harm or with any offense against his/her person or his/her property.
5.    Engaging in sexual acts with others.
6.    Making sexual proposals or threats to another.
7.    Indecent exposure.
8.    Escape.
9.    Attempting or planning an escape.
10.   Extortion, blackmail, protection; demanding or receiving anything of value in return for protection against other to avoid bodily harm or under threat or informing.

11.   Setting a fire.
12.   Causing a false fire alarm by activating the smoke detection/fire alarm system when there is no actual fire.
13.   Verbally issuing a false fire alarm.
14.   Destroying, altering, or damaging county property or the property of another person.
15.   Stealing (theft).
16.   Possession, introduction, or use of any intoxicants, narcotics, narcotic paraphernalia, or drugs not proscribed for the individual by a physician.
17.   Misuse of prescribed medication, including taking medication prescribed for another person.
18.   Having cigarettes/any other tobacco production in cell or your possession.
19.   Tampering with or blocking any locking device.
20.   Possession of property belonging to another person.
21.   Loaning of property or anything or value for profit or increased returns.
22.   Possession or introduction of a gun, firearm, weapon, sharpened instrument, knife, or unauthorized tool.
23.   Mutilating or altering clothing issued by the county.
24.   Rioting or encouraging other to riot.
25.   Engaging in or encouraging a group demonstration.
26.   Possession of unauthorized clothing.
27.   Refusing to work.
28.   Encouraging other to refuse to work or participating in work stoppages.
29.   Refusing to obey an order of any assignment.
30.   Unexcused absence from work or any assignment.
31.   Malingering or feigning an illness (pretending to be ill if you aren't).
32.   Failing to perform work as instructed by a jail staff member.
33.   Insolence toward a jail staff member.
34.   Lying or providing false information to a jail staff member.
35.   Conduct which disrupts or interferes with the security or orderly running of the jail.
36.   Being in an unauthorized area.
37.   Making, using, or possessing intoxicants.
38.   Failure to follow safety or sanitary regulations or orders.
39.   Using abusive or obscene language.
40.   Gambling.
41.   Being unsanitary or untidy. Failing to keep one's person and one's quarters in accordance with prescribed instruction.
42.   Tattooing or self-mutilation.
43.   Unauthorized contact with the public.
44.   Charging long distance telephone calls to an unauthorized number.
45.   Unauthorized use of the mail or telephone.
46.   Introducing or attempting to introduce contraband to the jail.
47.   Giving or offering anything or value to any staff member or offering any staff member a bribe.

48. Yelling, shouting, or talking through the window or by any other means to any person not officially related to the operation of the jail.

49. Violation of any statute or ordinance of the United States of America, The State of Alabama, Lowndes County, or any municipality in which you may be confined or present.

50. Attempting to commit any of the above offenses, aiding any other person to commit any of the above offenses, or make plans to commit any of the above offenses shall be considered the same as commission of the offense itself.

### SECTION II. INSTITUTIONAL LIVING

While you are in the Lowndes County Detention Facility, you have certain responsibilities not only to yourself but also to the other inmates. You must, therefore, keep your cell clean and the area around your bed neat and orderly. Keep in your possession only those articles that you need for daily living and do not allow your bed or living area to become cluttered with unnecessary items. Dispose of old papers and other fire hazardous materials and do not store them in your cell or in any other part of the inmate living area.

When you leave your cell to go to the Day Room, leave your mattress in the flat position on your bed and make your bed up neatly. Leave personal items under your mattress or in your box.

No tobacco products are allowed in the dorms. Any violation of this rule will result in losing privileges.

Your cell will be inspected periodically for cleanliness and for contraband. Possession of contraband articles, which do not belong to you, is a serious offense. Contraband is any article you possess that is not officially approved by the Sheriff or his designee. There are two categories of contraband. **Class A Contraband** is that which is criminal in nature or which possess a threat to the security of the jail such as, but not limited to, tools of escape, weapons, narcotics, and the like. **Class B Contraband** consists of items such as money, food and other goods, personal property, etc., not permitted in the inmate living areas and as defined elsewhere in the RULES AND INFORMATION FOR INMATES.

### SECTION III. CELL/LIVING AREA ASSIGNMENT

The assignment of an inmate to a particular cell, or any change in cell assignment, is the responsibility of jail officials only. Unauthorized change of cell or bed location may result in disciplinary action.

In so far possible, inmates will be assigned to particular cells/living areas in a manner that will assist in the maintenance of order and security in the jail. Inmates will not be separated on the basis of race or religion, but will be separated on the basis or sex. Jail officials reserve the right to change any cell/living area assignment at any time when necessary to better insure the safety of all persons, staff and inmates alike.

## SECTION IV. PERSONAL APPEARANCE AND HYGEINE

You are expected to maintain a good personal appearance and to practice good personal hygiene habits while an inmate in the Lowndes County Detention Facility. You should keep your body clean free of body odors and must take a shower at least two times per week. You may shower as many times during the week as you wish; however, you must shower at least two times per week.

You will be allowed to have a plastic comb in your possession" however, no metal combs will be allowed.

Any time a razor is given to you, you must use the razor and return the razor to the jailer on duty. Disciplinary action may be taken against you if you destroy or alter a razor. All razors will be given out and picked up before 11:00A.M.

If you have personal clothing that needs to be washed, you may make arrangement with the jailer to have your clothes washed for you. No clothes are to be hand washed in cells or hung to dry in cells.

Sheets will be washed on a regular basis. You are expected to return dirty sheets/linen to the jail staff at the time of released.

## SECTION V. VISITATION

Each inmate in the Lowndes County Detention Facility is permitted to select five (5) visitors who will be allowed to visit with him/her during regular visiting hours. Visitation is done by the first letter of the last name. A-L visitation hours is from 8:00 A.M. until 11:00 A.M., M-Z visitation hours is from 1:00 P.M. until 3:00 P.M., All females visitation is from 3:00 P.M. until 4:00 P.M.. Each inmate has 15 minutes when he comes down to visit. Inmates come down once. If time permits he/she may be brought down a second time. Only visitors traveling great distances (100 miles or more) will be permitted to visit longer or at other times, and then only with advance permission from the Sheriff of Lowndes County or his designee at the Lowndes County Detention Facility. Children can visit on third (3rd) Sunday only. Only Visitors or anyone with jail business are to be in lobby. All visitors must have proper and up to date ID.

Any attorney or minister, upon his/her request, will be allowed to visit privately with an inmate during reasonable hours except when meals are being served. However, the attorney or minister may be requested to provide appropriate identification and/or to submit to a reasonable search of his/her person or property before entering the area of the inmate. Refusal to consent to either of these may constitute grounds for denial of admission to the jail.

The following persons will not be allowed to visit an inmate in the Lowndes County Detention Facility: 1. Any person awaiting trail in any jurisdiction. 2. Any person

on furlough/pass from any correctional institution or jail. 3. Any person released from jail/prison during the past two (2) years. 4. Any person sixteen (16) years of age, unless advance permission is granted either by the Sheriff of Lowndes County or his designee. 5. Children can visit one (1) time a month on the third (3rd) Sunday, of each month.

Special visiting telephones are installed in visitation room for your convenience and so the you may talk with your visitor with a certain degree of privacy. Abuse or misuse of these telephones will result in disciplinary action or prosecution.

## SECTION VI. MAIL

All inmates in the Lowndes County Detention Facility may have access to the services of the United States Postal Service. The following rules pertain to mail service:

1. There shall be no censorship of incoming or outgoing U.S. Mail.
2. There is no limit on the number of letter an inmate may send or receive.
3. Jail authorities for contraband (see #4 below and SECTION II shall inspect all mail, both incoming and outgoing. INSTITUTIONAL LIVING).
4. Each inmate has the right to correspond with consul of his/her choice, public officials, or courts without having his/her correspondence read. However, any such correspondence may open in the present of the inmate and inspected for contraband.
5. Each inmate, will be requested to sign a declaration authorizing jail officials to open and inspect his/her, except for official correspondences as define in #4 above. Mail received for inmates who refuse to sign the declaration will be refused and returned to the United States Postal Service.
6. All outgoing and incoming mail must go through the jail staff member on duty at the time the correspondence is received or sent out. Other inmates, visitors, attorneys, ministers, or other persons may not act as conduits for mail.

## SECTION VII. FOOD SERVICE

Each inmate in the Lowndes County Detention Facility will receive three meals per day. Each inmate will receive his/her own food tray as it is passed into the tray slot. Each inmate is responsible for returning his/her own tray to slot. Each inmate is responsible for his own cup, fork and spoon issued to him or her by jail staff. Any inmate who abuses or misuses these items will charged item price and is subject to disciplinary action.

## SECTION VIII. MONEY AND CANTEEN PURCHASES

Visitors, family, and friend are allowed to bring money orders to the jail for your personal use. A cash receipt will be given to the inmate and the money order will be kept in a locked cabinet until it is deposit on Monday morning. No cash is allowed in living

area because of the potential for abuse and misuse not only of the money but also of the person possessing it. The only exception will be special permission granted by the Sheriff of Lowndes County or the Administrator or the Chief Jailer of Lowndes County Detention Facility. This will be done only in exceptional cases and such requests should be made in writing.

Inmates in the Lowndes County Detention Facility are not allowed to transfer money to other inmates. Money in your account can be used by you only.

Once or twice a week you will have the privilege of making purchases through the jail commissary. Money is deposit in the bank on Monday and Wednesday. The orders are done on Monday mornings and Wednesday nights. Chips, snack crackers, cookies, person hygiene products, writing material and stamps are available. No credit purchases are permitted. You have a purchase limit on snack items and an order limit of $50.00. You are encouraged to eat the meals provided by the jail and use the commissary purchases as a snack supplement only.

## SECTION IX. TELEPHONE CALLS

Each inmate will have the privilege of using the telephone. All calls must be collect and will be charged to the number the inmate calls. The jail staff is not allowed to receive or make calls for inmates. No incoming calls for inmates will be accepted. The telephones is turned on at 6:00 A.M. and turned off at 10:00 P.M.. Use of the telephone is a privilege and this privilege will be denied if it is abused.

No inmates will be permitted to use telephone at booking desk.

Intoxicated persons will not be permitted to use the telephone.

## SECTION X. TELEVISION

Television is provided in the jail for your convenience and entertainment. They may be turned off in the dayroom area for disciplinary reasons. No inmate is allowed to bother the television. If you destroy or damage a television, you will be prosecuted.

## SECTION XI. MEDICAL SERVICES

If you feel a need to see a doctor, you should fill out a REQUEST SLIP and give it to staff member on duty so that he/she can make an appointment. You will be carried to doctor as soon as an appointment can be made.

Dental treatment will be provided on an emergency basis. You will go through the same process as describe above.

Any medication prescribed for you by a physician will be obtained at a local pharmacy, kept in the booking office, and distributed to you at the prescribed times as directed by the prescribing physician. You are not permitted to keep prescribed

medications in your living areas. Hoarding and transferring of prescribed medications is not permitted and such action may subject you to disciplinary action and/or prosecution.

## SECTION XII. RELIGIOUS SERVICES

Community ministers will be permitted to provide religious services and/or counseling in the jail as security permits. If you desire to see a particular community minister, you may contact that minister and request that he/she make arrangements with jail personnel to visit with you.

## SECTION XIII. WORK RELEASE

The Lowndes County Detention Facility operates a community based Work Release Program under the authority of an act of the Alabama Legislature and contract with the Board of Corrections. Both county and state inmates are eligible to participate on the Work Release Program, but only with the permission of the Sheriff of Lowndes County. The Work Release Program is administered through the Sheriff's Office. All sentenced inmates are eligible for Work Release Program with the preference given to those inmates convicted of non-violent crimes. Any inmate who might be considered to is a security risk either to the jail or to the community will bot be considered for placement on Work Release Program.

## SECTION XIV. JAIL TRUSTYS

Certain inmates will be selected periodically to serve as trustees in the jail and to work around the jail without pay. The Sheriff of Lowndes County and/or the Administrator of the Lowndes County Detention Facility make selection of trustees. All inmates are eligible for consideration as trustees but only those considered to be good security risks and who show promise of good behavior and consistent work habits will be selected. Selection as a trusty does not guarantee that an inmate will be placed on Work Release Program at a later date.

## SECTION XV. DISCIPLINARY PROCEDURES

The discipline of an inmate for any offense or rule violation herein/before stated should be subject to punishment. Punishment may be ordered by the Sheriff, Chief Deputy, Administrator, Chief Jailer, or ranking shift officer. Punishment shall consist of the curtailment of privileges of an inmate or any number of inmates for a period of up to one week. Examples of Punishment are denial of television and/or commissary privileges, if punishment is warrant inmate will be brought up to isolation.

# LOWNDES COUNTY DETENTION FACILITY

## INMATE NOTICE:

TO:       ALL INMATES

FROM:    <u>WILLIE VAUGHNER</u>
                    SHERIFF

REFERENCE: ALL DOCTOR VISITS AND PRESCRIPTIONS.

AS OF NOVEMBER 1, 2002 THERE WILL BE A $12.00 CHARGE FOR
EACH DOCTOR VISIT AND $12.00 FOR EACH PRESCRIPTION THAT
WE HAVE FILLED. THIS CHARGE WILL BE DEDUCTED FROM
YOUR COMMISSARY MONEY.

WILLIE VAUGHNER

SHERIFF OF LOWNDES COUNTY

INMATE NOTICE

To: All Lowndes County Inmates

From: Sheriff / Jail Administrator

REFERENCE: OVER THE COUNTER MEDICINES

AS OF FEBRUARY 1.2005 THERE WILL BE A .25 CENT CO-CHARGE FOR TYLENOL AND SINUS MEDICINE. THIS CHARGE WILL BE DEDUCTED FROM YOUR COMMISSARY MONEY.

Willie Vaughner

*Willie Vaughner*

SHERIFF OF LOWNDES COUNTY

LOWNDES COUNTY DETENTION FACILITY

INMATE NOTICE

TO:        ALL INMATES

FROM:      CAPT L. GRESHAM
           ADMINISTRATOR

REF:       DOO RAGS/HEAD RAGS

EFFECTIVE APRIL 18, 2005, NO HEAD RAGS WILL BE WORN
WHILE YOU ARE HERE AT THIS FACILITY. YOUR PRIVILEGE
WILL BE TAKEN. IF YOU ARE WEARING A HEAD RAGS, NO
RAGES ARE TO BE WORN AT ANY TIME.

THANKS IN ADVANCE

CAPT.L. GRESHAM

LOWNDES COUNTY DETENTION FACILITY
HAYNEVILLE, ALABAMA

## POLICY AND PROCEDURE DIRECTIVE

SUBJECT:              Medical Services

1.    AUTHORITY:

Rules and Ethics of the Lowndes County Detention Facility --- Sheriff of Lowndes
County, Code of the State of Alabama,    1975

2.    PURPOSE:    This policy statment outlines the requirements for the provision and
delivery of health services to the inmates of the Lowndes County Detention
Facility.

3.    POLICY:    It is the policy of the Lowndes County Detention Facility that all
inmates have the right to have access to and receive medical services necessary for
maintaining their phsical and mental health. All health services are provided and
managed in accordance with state and federal standards, statutes, and precedent
laws.

4.    RESPONSIBLE HEALTH AUTHORITY:   The Lowndes County Detention
Facility will, pursuant to a written agreement, utilize a local physician, licenced to
practice medicine in the State of Alabama, as the responsible health authority.
The Lowndes County Detention Facility will function in the jail on a daily
basis in accordance with this Directive. No inmates will be utilized to provide any
patient care service, schedule medical appointments, or handle or have access to
medical instruments, medication, or records.

5.    LEVELS OF CARE AND TREATMENT PHILOSOPHY: The Lowndes
County Detention Facility makes the provision for the following levels of care,
performed in privacy, in consideration for the inmate's legal rights, dignity, and
feelings:

          a.    Self Care --- Care of any condition which can be treated by the
                inmate and may include "over-the-counter" type of medications
                as  furnished by the Jail Officer.

          b.    First Aid --- Care of any condition which requires immediate
                assistance by a person trainde in first aid procedures.

          c.    Emergency Care --- Care for an acute illness or unexpected
                medical need that cannot be deferred until next scheduled sick
                call or physician's appointment.

LOWNDES COUNTY DETENTION FACILITY
HAYNEVILLE, ALABAMA

POLICY AND PROCEDURE DIRECTIVE

SUBJECT:    Medical Services    (continued)

5.    LEVELS OF CARE AND TREMENT PHILOSOPHY:    (continued)

d.    Clinic Care --- Care for an ambulatory inmate with medical complaints
which are evaluated and treated and require additional follow-up.

e.    Hositalization --- In-patient care for illnessess or diagnoses which
require optimal observation and/or management in a licenced hospital.

6.    DECISION MAKING RELATIVE TO HEALTH SERVICES: Reconignizing the
need for patient care coordination, facility staff and medical personnel will consult
regarding any disposition of inmates with diagnosed and/or suspected medical
problems, including housing assignments, program assignments, disciplinary
actions, and transfers to, or from, the Lowndes County Detention Facility.

7.    RECEIVING HEALTH SCREENING: The Lowndes County Detention Facility
will not admit to the Jail any persons who are injured, unconscious, or seemingly
in need of immediate medical attention. This policy shall be binding in all cases
unless the arresting or transporting officer first carries the prisoner to a physician
for treatment/evalution and receives a written statement from the physician that
the prisoner has been examined and/or treated and is, in the opinion of the
physician, in suitable physical condition to be admitted to the Lowndes County
Detention Facility without additional medical attention or care. Upon representa-
tion of the written physician's statement to the Jail staff, the prisoner will be
accepted unless otherwise so specified by the Sheriff of Lowndes County or
his designate.

8.    DAILY TRIAGING OF HEALTH COMPLAINTS AND ACCESS TO
TREATMENT: Upon request, all inmates will be provided with a PRISONER
REQUEST FORM, for medical/health requests. It will be the responsibility of the
inmate to complete the form fully and foward to any Jail Officer during the
officer's normal rounds in the Jail. The Jail Officer will then foward the request
form to the Sheriff or his designee, who will arrange for appropriate medical
services and recording of all transactions.

9.    ROUTINE TRANSFER OF INMATES: In the event that it is necessary to
transfer an inmate from the Lowndes County Detention Facility, the Jail Officer
will make arrangements for appropriate transportation.

10.    DETOXIFICATION: Inmates shall not be accepted into the Jail for detoxification
purposes only. Inmates committed under the influence of alcohol, or other drug
or chemical agent, will be placed under special observation for a minimun of

LOWNDES COUNTY DETENTION FACILITY
HAYNEVILLE, ALABAMA

POLICY AND PROCEDURE DIRECTIVE

SUBJECT:   Medical Services   (continued)

10.   DETOXIFICATION:   (continued)

six (6) hours --- and up to twelve (12) hours if the Jail personnel believe that
continued observation and attention is needed.

In the event that a inmate begins experiencing acute withdrawal, it will be treated
by Jail personnel as a medical emergency and transportatio to a local physician
or hospital will be arranged.

11.   SPECIAL DIETS:   Special medical diets prescribed for an inmate by a
physician will be prepared and served to the inmate according to the orders
of the physician.

12.   DENTAL CARE:   Dental emergencies will be handled in the same manner
as medical emergencies. Dental appointments will be made by the Chief Jailer;
no dental wori other than extractions will be routinely unless the individual inmate
can arrange for payment of dental care costs, and if security needs to be met.

13.   MANAGEMENT OF PHARMACEUTICALS:   All prescription and
"over-the-counter" medications are to be kept in a safe cabinet in the Booking
Office. Medications are distributed by the jail staff and each medicine given is
recorded on individual medication sheets and signed by the inmate and initialed
by the jail staff administering the medication. Any irregularity is to be noted.
(example: medication refusal, medication loss). Following release of the inmate,
or termination of the prescription, this medication log is added to the inmate's
medical record.

14.   INFIRMARY CARE: The Lowndes County Detention Facility does not
operate an Infirmary.

15.   MEDICAL RESEARCH: No medical research is conducted on any inmate of
the Lowndes County Detention Facility.

16.   HOSPITAL CARE:   The Lowndes County Detention Facility does not
operate a hospital.

17.   INITIATING DEPARTMENT:   Lowndes County Sheriff Department.

# EXHIBIT  C

## Affidavit of Sheriff Willie Vaughner

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| SAMUEL LEE MOORE, <br> AIS 119785 | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )     Civ. Act. No. 2:07-CV-308-WHA <br> ) |
| SHERIFF D.T. MARSHALL, <br> et al., | ) <br> ) <br> ) |
| Defendants. | ) |

### <u>AFFIDAVIT OF WILLIE VAUGHNER</u>

| | |
|---|---|
| STATE OF ALABAMA | ) <br> ) |
| COUNTY OF LOWNDES | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Willie Vaughner, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Willie Vaughner. I am over the age of nineteen and competent to make this affidavit. I am the Sheriff of Lowndes County.

2.    I had no personal involvement in any of the events surrounding the incident alleged in Plaintiff's Complaint.

3.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.    I am responsible for promulgating the policies and procedures of the John Hulett Correctional Facility. The Lowndes County Detention Facility Policy and Procedures Manual states the policy of the John Hulett Correctional Facility regarding

Medical Treatment for Inmates. Our corrections officers are trained to defer to the opinion of medical professionals, and that is the Correctional Facility's policy on the matter. The policy is to ensure that inmates receive prompt, appropriate, and adequate medical treatment.

5.    I was not present when the Plaintiff was injured, nor was I present when he requested any type of medical assistance. The corrections officers working for me have historically followed the appropriate procedures for assisting inmates with medical problems, and nothing in the Plaintiff's recitation of events changes my opinion as to their practice in his case.

6.    To my knowledge, Plaintiff did not file any type of Grievance or Complaint with the officers of the John Hulett Correctional Facility or with Captain Laura Gresham, the Jail Administrator.

7.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_____
WILLIE VAUGHNER

**SWORN TO** and **SUBSCRIBED** before me this __1__ day of June 2007.

_____
NOTARY PUBLIC
My Commission Expires: _____ My Commission Expires 10/27/09

# EXHIBIT  D

## Affidavit of Captain Laura Gresham

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| SAMUEL LEE MOORE, | ) | |
| AIS 119785 | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Act. No. 2:07-CV-308-WHA |
| | ) | |
| SHERIFF D.T. MARSHALL, | ) | |
| et al., | ) | |
| | ) | |
|      Defendants. | ) | |

## AFFIDAVIT OF LAURA GRESHAM

|  |  |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF LOWNDES | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Laura Gresham, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.     My name is Laura Gresham. I am over the age of nineteen and competent to make this affidavit. For over three years, I have been the Administrator for the John Hulett Correctional Facility, and I am also the Records Custodian. I work directly for the Sheriff of Lowndes County. I have been a corrections officer for the John Hulett Correctional Facility for almost nineteen years, with one break of approximately a year to get married.

2.     I certify and state that the documents provided to the Court which are attached to the Defendant's Special Report are true and correct copies of inmate records, kept at the John Hulett Correctional Facility in the regular course of business.

3.    Also, I certify and state that the document titled "Medical Services" is a true and correct photocopy from the John Hulett Correctional Facility Policy & Procedure Manual, which is the Sheriff's governing policy document for that Facility. A contract nurse comes to our facility three times a week. If an inmate needs more advanced treatment, the medical professional, the contract nurse, recommends that we either transport the inmate to a doctor or hospital. If the contract nurse is not available, we contact the paramedics.

4.    I had no personal involvement in any of the events surrounding the incident alleged in Plaintiff's Complaint. I am familiar with the Plaintiff only because he spent less than 24 hours in the John Hulett Correctional Facility. He was booked in at 2:31 p.m. on December 4, 2006, and booked out at 11:30 a.m. on December 5, 2006. The Montgomery County Detention Facility transported him to our facility for temporary incarceration until he could be transported to the state correctional system. Plaintiff was incarcerated for unlawful distribution of controlled substances.

5.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

6.    I am responsible for ensuring compliance with and enforcement of the policies and procedures of the John Hulett Correctional Facility. The Lowndes County Detention Facility Policy and Procedures Manual states the policy of the John Hulett Correctional Facility regarding Medical Treatment for Inmates. Our corrections officers are trained to defer to the opinion of medical professionals, and that is the Correctional Facility's policy on the matter. The policy is to ensure that inmates receive prompt, appropriate, and adequate medical treatment.

7.    I was not present when the Plaintiff was injured, nor was I present when he requested any type of medical assistance. The corrections officers working for me have historically followed the appropriate procedures for assisting inmates with medical problems, and nothing in the Plaintiff's recitation of events or the accounts of the corrections officers that work for me changes my opinion as to their practice in his case. No officer who would have worked at the John Hulett Correctional Facility on December 5, 2006 can remember the Plaintiff complaining of pain or requesting any further treatment than he received on December 4, 2006. If he had requested such treatment or complained of pain, a corrections officer would have recorded such.

8.    The John Hulett Correctional Facility's policy regarding Grievances allows inmates to file a form titled "LOWNDES COUNTY DETENTION FACILITY INMATE REQUEST FORM," which has categories for any type of complaint, including medical complaints. An inmate may turn that form into any correction officer at the John Hulett Correctional Facility. If it is a simple request that a corrections officer can handle, that officer answers the inmate's complaint. If the Grievance is not within that officer's authority or competence, or if the inmate is dissatisfied with the corrections officer's answer, that inmate may file the form with me.

9.    To my knowledge, Plaintiff did not at any time file any type of Grievance or Complaint with the officers of the John Hulett Correctional Facility or with me, the Jail Administrator.

10.    To the best of my knowledge as Administrator of the John Hulett Correctional Facility, Plaintiff was transported on the morning of December 5, 2006,

sometime before 11:30 a.m., with nothing out of the ordinary occurring.  Nor did Plaintiff complain of pain, bad treatment, or inadequate medical treatment.

11.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_____

LAURA GRESHAM

**SWORN TO** and **SUBSCRIBED** before me this _1ˢᵗ_ day of June 2007.

_____

NOTARY PUBLIC

My Commission Expires: My Commission Expires 10/27/09

# EXHIBIT  E

# Affidavit of Sergeant Marilyn Mealing

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| SAMUEL LEE MOORE, | ) | |
| AIS 119785 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Act. No. 2:07-CV-308-WHA |
| | ) | |
| SHERIFF D.T. MARSHALL, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF MARILYN MEALING

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF LOWNDES | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Marilyn Mealing, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Marilyn Mealing.   I am over the age of nineteen and competent to make this affidavit.  I have been employed as a Corrections Officer by the John Hulett Correctional Facility, the Lowndes County Detention Facility, where Plaintiff was incarcerated from December 4-5, 2006 since approximately 2001. I presently hold the rank of Sergeant. On December 4-5, 2006, the period of the alleged incident involving the Plaintiff, I worked a shift at the John Hulett Correctional Facility from 6:00 p.m., December 4th, to 6:00 a.m., December 5th.

2.    I am familiar with the Plaintiff Samuel Lee Moore due to his incarceration in the John Hulett Correctional Facility, and I am also familiar with the Policy and

Procedures Manual of the Lowndes County Detention Facility, which is also named the John Hulett Correctional Facility.

3.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.    I am familiar with the John Hulett Correctional Facility Policy and Procedures Manual and followed those procedures with respect to the Plaintiff in this case, while he was incarcerated at the John Hulett Correctional Facility. To the best of my knowledge and belief, Plaintiff never filed a "Lowndes County Detention Facility Inmate Request Form" with me, Captain Gresham, or any other corrections officer while incarcerated at the John Hulett Correctional Facility from December 4-5, 2006.

5.    Shortly after my arrival for my shift on December 4, 2006, I learned from another inmate that Plaintiff had hurt his ankle when he jumped out of his bunk. I called the paramedics because it was after hours for a doctor or our contracted nurse, and because that is the John Hulett Correctional Facility's procedure for falls in the jail. The paramedics checked Plaintiff in my presence. At no time, did Plaintiff state that he was seriously hurt or demand to go to a doctor, nurse, clinic, or hospital at any time. He stated that he had hurt his ankle getting out of his bunk, and his ankle "hurt a little." Plaintiff walked to the booking area to be examined by the paramedics and did not demonstrate a serious injury by the way he walked. Plaintiff's bunk bed is a normal bunk bed with a mattress, and it is approximately five feet from the floor. Plaintiff moved his toes and ankle normally for the paramedics and did not indicate he was in serious pain. The paramedics determined that Plaintiff had not broken his ankle and to give Plaintiff

Tylenol for pain. The paramedics did not say that Plaintiff should see a doctor or go to a hospital.

6.     In accordance with the policy of the John Hulett Correctional Facility and because Plaintiff was actually an inmate in the custody of the Montgomery Detention Facility, I called the Montgomery County Detention Facility to inform that facility of Plaintiff's injury. I informed that facility of the paramedics' evaluation of Plaintiff, and that facility informed me that it does not transport inmates with such a minor injury at night and that a transport team from Montgomery County would arrive at the John Hulett Correctional Facility to transport Plaintiff to Montgomery County sometime the next day. Montgomery County did not give approval for the paramedics to transport Plaintiff that evening to Montgomery County.

7.     Right after the paramedics evaluated Plaintiff, Plaintiff asked for a Tylenol. Normally, our procedure is to record in the "Message Book" that Plaintiff requested pain medication like Tylenol, but I did not in this instance because the Tylenol was prescribed by medical personnel, the paramedics. Plaintiff returned at approximately 10:00 p.m., asking for more Tylenol, but because not enough time had passed for giving him more, I told him he would have to wait. However, because Plaintiff returned to his bed and went to sleep, I did not give him any more Tylenol that night. Plaintiff slept the rest of the night, and I did not hear from him again. He did not complain of pain or in any other way because he was asleep the entire night. I would know if Plaintiff had any complaint about his injury or that he was in pain that night because in accordance with our duty and the policy and procedure of the John Hulett Correctional Facility, I walked through the cell blocks at least once an hour to check on the inmates, particularly those

that are nearby in the booking cell, like Plaintiff. If Plaintiff had awakened and asked for more Tylenol, I would have given him more.

8. Upon my departure at 6:00 a.m. on December 5, 2006, I would have informed the corrections officer that replaced me about Plaintiff; however, I do not remember who took my place. I was not present when Plaintiff was transported to Montgomery County's Detention Facility on December 5, 2006.

9. I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.


_Marilyn Mealing_
MARILYN MEALING

**SWORN TO** and **SUBSCRIBED** before me this 1st day of June 2007.


_[signature]_
NOTARY PUBLIC
My Commission Expires: April 6, 2010

# EXHIBIT  F

## Detainee Moore's Medical Record from Lowndes County Jail

| | | | | | |
|---|---|---|---|---|---|

**Emergystat**

Called In: _____   Date/Time: 12-4-06

Date 12-4-06  County Lowndes
Run# 113099  Truck# 495  ☐ ALS  ☐ BLS  ☐ Emergency  ☐ Non-Emergency   Local Run #

| RECEIVED | DISPATCH | ENROUTE | ARRIVE LOC | DEPART LOC | ARRIVE DEST | DEPART DEST | AVAILABLE |
|---|---|---|---|---|---|---|---|
| | | 1811 | 1815 | | | | |

**Time / Odometer Reading** 234671  236672   Pt. Loaded Miles

Patient  Last Moore  First Samuel  Middle Lee   334/Phone 613-0617  Age 57  DOB 1/13/49  Sex M/F

Address 1807 Palmetto Street   SS# 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  Accident MVA  Fall  Work Related other  Circle One none

City Montgomery  State AL  Zip Code 36109  Insurance Name   Insurance Policy #

Responsible Party / Employer  Medicare  Medicaid  Insurance Address  Group #

**Chief Complaint (Medical Reason for calling Ambulance)** L ankle Pain
**Current Medications** Unknown

**Why Patient Can Not Ambulate On Their Own?**
**Allergies Medical** Unknown

**Why Patient Is Considered Bed Confined and cannot sit up?**
**Past Medical History other** Unknown
MI  CHF  COPD  B/P  Diabetic  Cancer  Accident  Paralysis  CVA

**Charges** Monitor  Oxygen  IV  Fluid  Trauma Pak  Med  Other

**If Hosp. to Hosp. transfer what services are not available at first hospital.**

**Drugs Administered by Emergystat**   **Glasgow Coma Scale**  Eyes ___ Verbal ___ Motor ___

**Pick Up Location:** Lowndes County Jail  City Hayneville  State AL  Zip Code
**Drop Off Location:** Refusal  City  State  Zip Code

**Narrative**  A ___ assessment was performed by EMT - ___ Level ___ Name ___

the following was found. (USE CHART METHOD) Pt is A 57 y/o male c/o (L) ankle Pain States he fell off a Bunk while in the Jail O, Arrival Pt is awake, Alert, And oriented. Edema Noted to (L) ankle, Montgomery County officials Refuse Transport of Pt who is an Inmate of Montgomery County.

| Time | Pulse | Resp. | Mon | Pulse Ox | CBG | B/P | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

I Narrative / of ___

**Attendant (must print)**   **Driver (must print)** John Brooks 060306  **Medical Control** Protocol
**Attendant Signature**   **Driver Signature**  **Person Receiving**

This is to certify that I am refusing treatment/transport. I have been informed of the risk(s) involved, and hereby release the ambulance service, its attendants, and its affiliates, from all responsibility which may result from this action.
Sgt. Martin
**Patient Signature**  Date/Time

I authorize any holder of medical information to release to Emergystat, Inc. any information to process this claim. I understand that I am responsible for this bill and I have received my Notice of Privacy Rights.
**Patient Signature or Patient Representation**  Time Date / /

# EXHIBIT  G

## Lowndes County Detention Facility
## Inmate Request form

# LOWNDES COUNTY DETENTION FACILITY
## INMATE REQUEST FORM

Note: Please print all information.

Name: _____ Cell: _____

Date: _____ Time: _____

SSN: _____ DOB: _____ Race/Sex: _____

Please check one of the following:

__ Appeal of Grievance/Disciplinary          __ Court Date Information

__ Bond Information                          __ Medical Information

__ Charges Information                       __ Classification Information

__ Commissary / Money Clerk Information      __ Visitation Information

                    __ Request To Visit Law Library

Biefly State Your Request Then Give To Jail Officer

_____
_____
_____
_____
_____

### DO NOT WRITE BELOW THIS LINE--FOR STAFF USE ONLY

Officer Recieving Request: _____
                                    Date:_____ Time:_____

Date:_____          ACTION TAKEN          Time:_____

_____
_____
_____
_____

Signature:_____